E-FILED
Tuesday, 20 July, 2021  11:56:22 AM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19-cr-30049 |
| | ) | |
| TYRONE MAXWELL, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>REPORT AND RECOMMENDATION</u>

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court for a Report and Recommendation on Defendant Tyrone Maxwell's Motion to Suppress Evidence Unlawfully Acquired (d/e 16) (Motion).  On September 4, 2019, a grand jury indicted Maxwell, charging him with possession with intent to distribute mixtures or substances containing a detectable amount of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D) (Count One); possession of firearms in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (c)(1)(B)(i), and (c)(1)(A)(iii) (Count Two); and possession of a firearm by a felon in violation of 18 U.S.C. §922(g)(1) (Count Three).  <u>Indictment (d/e 1)</u>.  The Indictment also alleged one count seeking forfeiture of certain property pursuant to 18 U.S.C. § 922(g) and 924(c).  <u>Id</u>.

The Court conducted a hearing in this matter on June 8, 2021 (Hearing).  The Defendant appeared personally and with his attorney Mark Kevin Wycoff, Sr.  The Government appeared by Assistant United States Attorneys Matthew Weir.  Upon careful consideration of the evidence presented and the submissions of the parties, this Court recommends that the Motion to Suppress be DENIED for the reasons set forth below.

<u>STATEMENT OF FACTS</u>

On August 20, 2019, at 12:44 p.m., Springfield, Illinois Police Officers were dispatched to an apartment building at 1021 St. 1st Street, Springfield, Illinois (the Apartment Building), to respond to a report of shots fired.  Three persons who were in an apartment in the Apartment Building (Callers) reported to Springfield Illinois Police Dispatch (Dispatch) that a shooting had occurred in the Apartment Building.  The three Callers spoke to Dispatch through a single telephone.  One of the Callers stated that a person rang the doorbell to the Callers' apartment.  The apartment doorbells were located outside the locked front door of the Apartment Building.  The person who rang the doorbell stated (apparently over an intercom system) that he was looking for Apartment 7 and rang the wrong doorbell by mistake.  One of the Callers remotely unlocked the front door to let the person into the Apartment Building.  Shortly thereafter, the Callers

heard several gun shots.  One Caller said the person who rang the doorbell was a black male wearing rubber gloves.  Another Caller said that there was a "plastic thing that holds a gun" outside Apartment 7.  One Caller said that two black males entered the building.  One or more of the Callers said that the two black males left the apartment building after the shots were fired.[1]  Government's  Brief in Opposition to Defendant's Motion to Suppress Evidence (d/e 44), Exhibit A (d/e 46), Complaint for Search Warrant, Affidavit, and Search Warrant, Affidavit of Springfield Police Officer Michael Egan (Egan Affidavit).

Springfield Police Officers went to the Apartment Building, including Springfield Police Sergeant Grant Barksdale.  At least one other officer arrived before Barksdale.  Barksdale entered the building and went upstairs to the landing in front of Apartment 7.  Shell casings were on the stairs leading up to the landing and a gun holster was in the stairwell.  The door to Apartment 7 was locked.  Sergeant Barksdale observed two bullet holes in the door to Apartment 7.  The two bullet holes were near the deadbolt lock on the door.  The officers decided to enter Apartment 7 to check for possible victims of the shooting.  The officers announced that they were

---

[1] Other residents of the Apartment Building subsequently confirmed that two Black men entered the Apartment Building, went to Apartment 7, and then they heard the gun shots.  Hearing Transcript (d/e 42), at 41.

police and attempted to make verbal contact with anyone inside Apartment 7. The officers heard no response. The officers did not hear any sounds coming from Apartment 7. The officers then forced the door open with a sledgehammer. Ten minutes elapsed from the time that Sergeant Barksdale arrived at the scene until the door to Apartment 7 was forced open. Before entering Apartment 7, Sergeant Barksdale called for an ambulance to come to the scene in case anyone was hurt inside Apartment 7. Egan Affidavit; Hearing Transcript (d/e 42), at 14-18, 34, 38.

Once inside, the officers stayed in Apartment 7 about a minute to a minute and a half. Apartment 7 was a one-bedroom apartment with a living room, bedroom, kitchen, and bathroom. Upon entry, the officers smelled a strong odor of raw cannabis and Sergeant Barksdale saw cannabis in the open in the Apartment. The officers also observed an electronic money counter on an end table in the living room. Sergeant Barksdale opened the closed door to the bedroom. Sergeant Barksdale also opened the doors to two closets, one in the bedroom and one in the living room. The officers did not open any drawers or containers. In one closet Sergeant Barksdale saw larger clear zip-lock bags of cannabis, and in the other he saw a rifle. The officers did not remove any items from Apartment 7. The officers did not find anyone in Apartment 7. The officers did not see any blood or blood

splatter in Apartment 7.  The officers left Apartment 7 and left one officer to guard the apartment door.  Maxwell subsequently arrived at the Apartment Building.  Maxwell stated that he lived in Apartment 7.  <u>Egan Affidavit</u>; <u>Hearing Transcript</u>, 18-25, 44-49.

The officers secured a warrant to search Apartment 7.  The officers found a Smith and Wesson .40 caliber pistol, a Star 15 AR-15 5.56 caliber rifle, 5,115.39 grams of cannabis, and $75,144.00 in currency.  <u>Motion</u>, at 3-4.  Maxwell seeks to suppress the evidence found in the search of Apartment 7 and any statements or other evidence that followed from the search.

ANALYSIS

The Fourth Amendment protects individuals from unreasonable searches and seizures.  U.S. Const. amend. IV.  Barksdale and the other officers searched Apartment 7 without a warrant.  A warrantless search is presumptively unreasonable.  <u>Katz v United States</u>, 389 U.S. 347, 357 (1967).  The Government must demonstrate that the warrantless search was reasonable under the circumstances.  <u>Brigham City, Utah v. Stuart</u>, 547 U.S. 398,403 (2006).

In this case, Barksdale and the other officers reasonably searched Apartment 7 because the shooting created an exigent circumstance to see

if anyone was inside Apartment 7 who was injured by the bullets fired through the door.  Exigent circumstances exist if police reasonably believe a person within the premises needs immediate care or the officers reasonably fear for a person's safety.  Mincy v. Arizona, 437 U.S. 385, 392 (1978).  The standard for judging the exigency of the situation is an objective test.  The Court must determine whether the facts and circumstances known to the officers at the moment of entry would lead a reasonable, experienced police officer to believe that someone inside the dwelling required immediate assistance.  United States v. Arch, 7 F.3d 1300, 1304 (7th Cir. 1993).  The officers do not need to be certain that someone inside the dwelling is injured in order to search.  The circumstances must be such that a reasonable officer would have legitimate concerns about the welfare of an occupant of the dwelling.  See United States v. Brown, 64 F.3d 1083, 1086 (1995).  The officer's personal motivation is not relevant to determining the reasonableness of the warrantless search.  Brigham City, 547 U.S. at 404-05.   Once officers enter a dwelling based on exigent circumstances, the search of the dwelling must be appropriately limited to the circumstances that justified it. See United States v. Salava, 978 F.2d 320, 325 (7th Cir. 1992) (officers spent one minute in the dwelling to check for shooting victims).  If no one is

present in the dwelling, the officers should leave promptly.  See Arch, 7 F.3d at 1304 (citing United States v. Richards, 937 F.2d 1287, 1292 (7th Cir. 1991).

Barksdale and the other officers reasonably entered Apartment 7 to check for possible victims of the shooting.  Witnesses reported two men shot through the door to Apartment 7.  Shell casings and a holster were in the stairs near Apartment 7.  No one inside Apartment 7 responded when officers called out.  A reasonable officer under these circumstances would conclude that a person could be shot or otherwise injured from the shooting and unable to respond.  The Court finds that the officers' warrantless entry of Apartment 7 was reasonable due to the exigent circumstances caused by the individuals who shot through the door.  See United States v. Schmidt, 700 F.3d 934 (7th Cir. 2012) (officers reasonably entered a fenced backyard to search for possible for injured persons after a shooting); Salava, 978 F.2d at 325 (officers reasonably entered a trailer home to check for shooting victims).

Maxwell argues that the entry was not reasonable because the officers did not have the same amount of information as the officers in Brigham City and did not act in the same manner as the officers in the Supreme Court decision in Brigham City.   In Brigham City, the officers

heard loud noises coming from a residence at 3:00 a.m. and saw minors drinking alcohol in the backyard of the residence.  The officers approached the back door.  The back door was open, but the exterior screen door was closed.  Through the screen door, the officers saw individuals fighting in the apartment.  The officers saw one man injure another during the fight.  The officers announced at the screen door, but no on inside heard them.  The officers then open the unlocked screen door and entered and announced inside.  The Supreme Court said that the officers' actions were objectively reasonable in that case to protect the person injured in the fight.  Brigham City, 547 U.S. at 405-46.

The Supreme Court in Brigham City, however, did not limit valid warrantless searches to the facts of that case.  The Supreme Court recited the established rule, "Accordingly, law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." 547 U.S. at 403 (quoting Mincey, 437 U.S. at 393-94).  The facts known by Barksdale and the other officers here demonstrate that a reasonable officer would conclude that any person inside Apartment 7 was at risk of being injured from the shooting.  The circumstances do not require the officer to know for sure that a person was inside, only that that the risk of significant harm was

real.  Brown, 64 F.3d at 1086; Salava, 978 F.2d at 325.  The decision by Barksdale and the other officers to enter Apartment 7 to see if anyone was hurt was objectively reasonable due to the exigent circumstances.

Maxwell argues that shooting through a door near the lock on the door did not pose a risk of harm to the possible occupants of Apartment 7. Maxwell cites no authority for this proposition.  The Court finds this unsupported argument unpersuasive.  The bullets went through the door. The officers did not know where the bullets went inside Apartment 7.  The risk of harm to occupants existed from the shooting, regardless of the fact that the individuals shot near the lock.

Maxwell invites the Court not to follow Seventh Circuit cases issued prior to Brigham City.  See Defendant's Reply to Government's Brief in Opposition to Defendant's Motion to Suppress Evidence (d/e 48), at 2. Maxwell notes that the Supreme Court heard Brigham City to resolve differing views in lower courts regarding the exigent circumstances exception to the warrant requirement.  547 U.S. at 402.  The Supreme Court stated that certain lower courts incorrectly looked to the subjective intent of the officer involved rather than applying an objective test of reasonableness.  547 U.S. at 404-05.  The Supreme Court did not cite any Seventh Circuit case as applying an improper subjective test, and the

Supreme Court did not overrule or abrogate any Seventh Circuit decision. 547 U.S. at 402. The Seventh Circuit cases before Brigham City also applied the objective test approved by the Brigham City decision. The Seventh Circuit opinion issued before Brigham City and cited by the Court in this Report and Recommendation remains good law and this Court must follow it. The officers' entry into Apartment 7 was reasonable under the circumstances.

Once inside Apartment 7, the officers limited their search appropriately. The officers quickly searched to determine whether anyone was hurt. The officers stayed in Apartment 7 only a minute to a minute and a half. The officers did not open any drawers or containers. The officers did not take anything from Apartment 7. Barksdale briefly opened the closet doors to check for injured persons. The officers then left. The search was appropriate to the circumstances. See Arch, 7 F.3d at 1304.

The subsequent warrant was supported by probable cause. The officers smelled raw marijuana immediately upon entry of Apartment 7. Barksdale saw marijuana out in the open in Apartment 7. The officers also saw an electronic money counter on an end table in Apartment 7. Such machines were often used in connection with drug trafficking. Egan Affidavit. This evidence alone provided probable cause to support the

warrant.  In addition, Barksdale saw bags of marijuana and a rifle in the two

closets.  Barksdale's checking of the closets was reasonable and so this

information added support for a finding of probable cause.  The search

incident to the warrant was valid.  The motion to suppress the evidence

should be denied.

THEREFORE, THIS COURT RECOMMENDS that Defendant Tyrone

Maxwell's Motion to Suppress Evidence Unlawfully Acquired (d/e 16) be

DENIED.

The parties are advised that any objection to this Report and

Recommendation must be filed in writing with the Clerk of the Court within

fourteen days after service of a copy of this Report and Recommendation.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file a timely

objection will constitute a waiver of objections on appeal.  See Video

Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986).  See Local

Rule 72.2.

ENTER:   July 20, 2021

_s/ Tom Schanzle-Haskins_
TOM SCHANZLE-HASKINS
UNITED STATES MAGISTRATE JUDGE