IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-cr-30049 |
| ) | |
| **TYRONE MAXWELL,** ) | |
| ) | |
| Defendant. ) | |

**ORDER**

**SUE E. MYERSCOUGH, U.S. District Judge:**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Tom Schanzle-Haskins (d/e 49) on Defendant Tyrone Maxwell's Motion to Suppress Evidence Unlawfully Acquired (d/e 16).  Magistrate Judge Schanzle-Haskins recommends that this Court deny Defendant's Motion to Suppress.  On August 2, 2021, Defendant filed Objections to the Report and Recommendation (d/e 50).

The district court reviews de novo any part of a magistrate judge's report and recommendation to which a specific written objection has been made.  Fed. R. Crim. P. 59(b); 28 U.S.C. § 636(b)(1).  The Court has thoroughly reviewed Magistrate Judge

Schanzle-Haskins' Report and Recommendation and Defendant's Objection to the Report and Recommendation. Applying a de novo review, the Court agrees with Magistrate Judge Schanzle-Haskins' recommendations and the analysis underlying those recommendations. The Court, therefore, accepts and adopts Magistrate Judge Schanzle-Haskins' Report and Recommendation. Because the warrantless entry of Defendant's residence was reasonable due to exigent circumstances and the subsequent search incident to a search warrant was supported by probable cause, Defendant's Motion to Suppress Evidence Unlawfully Acquired (d/e 16) is DENIED.

## I. BACKGROUND

On September 4, 2019, the grand jury charged Defendant by way of indictment with one count of possession with intent to distribute mixtures or substances containing a detectable amount of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), one count of possession of firearms in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (c)(1)(B)(i), and (c)(1)(A)(iii), and one count of possession of a firearm by a felon in

violation of 18 U.S.C. § 922(g)(1).  Indictment, d/e 1.  On June 4, 2020, Defendant filed the Motion to Suppress now before the Court.

In the Motion to Suppress, Defendant moves the Court to suppress evidence acquired during a warrantless search of Defendant's residence, as well as a subsequent search pursuant to a search warrant.  On June 8, 2021 Magistrate Judge Schanzle-Haskins held an evidentiary hearing on the Motion to Suppress, at which one of the police officers involved in the initial warrantless search, Sergeant Grant Barksdale, testified.  Magistrate Judge Schanzle-Haskins directed the parties to submit written briefs in lieu of closing arguments at the evidentiary hearing.  Defendant subsequently filed a Brief in Support of His Motion to Suppress Evidence Unlawfully Acquired (d/e 43), the Government filed a Brief in Opposition to Defendant's Motion to Suppress Evidence (d/e 44), and Defendant filed a Reply to the Government's Brief in Opposition (d/e 48).  The following facts are drawn from the transcript of the evidentiary hearing.

On August 20, 2019, officers of the Springfield Police Department responded to a report of shots fired at 1021 South First Street, Apartment 7, in Springfield, Illinois.  Suppression Hr'g Tr.

14:3-21. Occupants of a different apartment had let into the apartment building two individuals who said they were trying to contact the occupant of Apartment 7. Id. at 40:1-7. Shortly afterwards, the occupants of the other apartment heard gunshots and called the police. Id. at 41:8-15. When the police officers arrived, the officers observed shell casings on the stairs, a holster for a firearm on the floor, and two bullet holes in the door to Apartment 7 in the area of the deadbolt lock. Id. at 15:5-18.

The officers decided that entry needed to be made into Apartment 7 in order to determine whether there were people inside the apartment who were injured or in need of assistance. Id. at 15:19-16:6. The officers attempted to make verbal contact with any person who may have been inside Apartment 7, but after receiving no response, the officers first unsuccessfully attempted to enter with manual force. Id. at 16:7-13, 17:8-10. A Deputy from the Sangamon County Sheriff's Department then arrived on the scene with a sledgehammer that the officers used to gain entry to the apartment. Id. at 11-17. Approximately ten minutes passed from the time the officers first arrived on the scene to the time the officers made entry into the apartment. Id. at 17:18-21.

Prior to forcing entry into the apartment, the officers did not hear any cries for help from inside the apartment or any sounds that would indicate there were people in the apartment. Id. at 38:12-39:6. The officers also did not observe any blood outside the apartment in the foyer or on the door. Id. at 39:7-10.

Immediately upon entering the apartment, the officers smelled the odor of raw marijuana and saw a money counting machine on a table in the living room, which the front door of the apartment opened into. Id. at 18:17-19:2, 22:11-17. Sergeant Barksdale first went into the bedroom, where he opened a closet door to look for potential victims. Id. at 19:10-20:13. In the bedroom closet, Sergeant Barksdale observed a large quantity of marijuana. Id. at 22:1-8. Sergeant Barksdale also opened a closet in the living room, moving hanging clothes to look where a person could have been behind them. Id. at 21:2-6, 13-20. In the living room closet, Sergeant Barksdale observed what appeared to be an AR-type rifle. Id. at 21:9-12.

To Sergeant Barksdale's knowledge, no officers opened any drawers inside the apartment, opened any containers other than the closets, or otherwise searched in places where a person would

not have been able to fit.  Id. at 20:17-20, 22:18-25.  The search took approximately a minute to a minute and a half.  Id. at 23:9-13.

After determining that there was no one inside the apartment, the officers exited the apartment.  Id. at 23:5-8.  Information about the firearm and the marijuana observed by the officers during the search was then used to obtain a search warrant for the apartment.  Id. at 23:20-24:2.  During the subsequent search pursuant to the search warrant, the officers seized the evidence Defendant now moves to suppress, consisting of a Smith and Wesson .40 caliber pistol, a Star 15 AR-15 5.56 caliber rifle, 5,115.39 grams of marijuana, and $75,144.00 in U.S. currency.  Id. at 24:3-6.  The parties stipulate that there was a warrantless entry to Defendant's apartment and that Defendant has standing to challenge the search.  Id. at 10:8-12.

## II. LEGAL STANDARD

The Fourth Amendment to the Constitution guarantees the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Subject to certain exceptions, it is a violation of the Fourth Amendment for a police officer to search a defendant's

residence without a valid warrant. Maryland v. Dyson, 527 U.S. 465, 466 (1999). One such exception that obviates the warrant requirement is in a situation where a warrantless entry is necessary to "assist persons who are seriously injured or threatened with such injury." Brigham City v. Stuart, 547 U.S. 398, 403 (2006).

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness'" . . . . Id. at 403. "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'" Id. at 404 (quoting Scott v. United States, 436 U.S. 128, 138 (1978)) (emphasis and other citations omitted; alteration in original). An "officer's subjective motivation is irrelevant." Id. (citing Bond v. United States, 529 U.S. 334, 338, n. 2 (2000)).

Officers do not need to know with absolute certainty that a person inside a residence is injured in order to conduct a warrantless search. The circumstances only must be such that a reasonable officer would have legitimate concerns about the welfare of an occupant of the residence. United States v. Brown, 64 F.3d 1083 (7th Cir. 1995). Once officers enter a residence based on exigent circumstances, the scope of the search must be constrained

by the circumstances justifying the search.  United States v. Salava, 978 F.2d 320, 325 (7th Cir. 1992).  If, upon entry, facts are discovered that negate the circumstances justifying the search, the officers must leave immediately.  United States v. Arch, 7 F.3d 1300, 1304 (7th Cir. 1993) (citing United States v. Richards, 937 F.2d 1287, 1292 (7th Cir. 1991)).

### III. ANALYSIS

In his Report and Recommendation, Magistrate Judge Schanzle-Haskins reviewed the facts of the case and the applicable law and concluded that the officers' entry into Apartment 7 was reasonable under the circumstances, the scope of the search was appropriate to the circumstances, and the subsequent search warrant was supported by probable cause.  Report and Recommendation 10.  In his Objection to the Report and Recommendation, Defendant takes issue with several points of authority relied on by the Magistrate Judge in the Report and Recommendation, contending that in each of the cases cited, "no physical force or destruction was required" to facilitate the warrantless entries.  Objection 3-5 (citing Brigham City, 547 U.S. at 403; United States v. Schmidt, 700 F.3d 934 (7th Cir. 2012); United

States v. Brown, 64 F.3d 1083 (7th Cir. 1995); United States v. Arch, 7 F.3d 1300 (7th Cir. 1993); United States v. Salava, 978 F.2d 320 (7th Cir. 1992); and United States v. Richards, 937 F.2d 1287 (7th Cir 1991)).

Defendant argues that the facts of this case are distinguishable from the cases cited and that "forcefully beating down [Defendant's] door with a sledgehammer was manifestly and objectively unreasonable under the circumstances." Objection 5. The implication being that the method used to gain entry in this case must be unreasonable. But the analysis of reasonableness does not turn solely on the method used to gain entry, but rather recall that "an action is 'reasonable' under the Fourth Amendment, . . . 'as long as the circumstances, viewed objectively, justify [the] action.'" Brigham City, 547 U.S. at 404.

In this case, the officers arrived on the scene of a shots-fired call to find spent shell casings and a holster on the floor and two bullet holes in the door of Apartment 7. Defendant argues that because the bullet holes in the door were in the area of the deadbolt that it should have been clear to the officers that the assailants were only attempting to gain entry into the apartment. But

Sergeant Barksdale testified that the officers' concern was that there could have been someone on the other side of the door coming to answer the door or trying to close the door who could have been struck by one of the rounds fired in the direction of the deadbolt. Suppression Hr'g Tr. 16:1-6. Even if the shots were directed at the deadbolt, it is reasonable to assume that an occupant may have been struck by those shots and injured if the occupant had been coming to answer the door or attempting to brace the door to keep out the assailants.

After evaluating the scene, the officers first attempted to manually force the door open, but only after trying to do so unsuccessfully did the officers resort to the use of a tool to gain entry. Whether the method used to gain entry is an officer's shoulder or a tool, reasonableness remains the ultimate touchstone. Likewise, whether the means of gaining entry requires physical force or destruction is still subject to the reasonableness analysis. Every entry requires some measure of physical force, be it opening a sliding door or beating down a locked door, and Defendant has not cited any cases that draw a line at the use of

mechanical means to gain entry to a residence that would make the use of a sledgehammer presumptively unreasonable.

In the Motion to Suppress, Defendant argues that the lack of blood on the door or in the hallway and the absence of sounds coming from inside Apartment 7 indicating that an injured person was inside suggest that the officers' concerns that injured persons may have been in the apartment were unreasonable. Mot. to Suppress 3. Defendant also argues that once the officers gained entry to the apartment and did not immediately see signs of an injured person they should have immediately departed. Id. at 5. But again, the analysis does not depend on the subjective intentions of the officers, but an objective assessment of the circumstances. See Brigham City, 547 U.S. at 404. Viewed objectively, it is reasonable to assume that, had a person been shot through a door, any blood would be inside the apartment. And, moreover, Sergeant Barksdale also testified that in his experience it is possible for a person to be shot without experiencing a significant loss of blood. See Suppression Hr'g Tr. 24:14-17. Similarly, it is objectively reasonable to assume that, had an occupant of the apartment been injured by the shots, the occupant may have

hidden themselves within the apartment. Finally, officers are not required to wait to hear a cry for help before making a warrantless entry. It is unreasonable to think "that the police must stand outside an apartment, despite legitimate concerns about the welfare of the occupant, unless they can hear screams." Brown, 64 F.3d at 1086.

Only ten minutes passed from the time the officers arrived at Apartment 7 to the time entry was made. Once inside the apartment, the officers limited their search to areas where an injured person in need of assistance may have been hiding. Finding no one present in the apartment, the officers left immediately. The entire search took only a minute to a minute and a half. Due to the exigency created by the shots fired through the door to the apartment and the likelihood that there was someone inside the apartment in need of immediate assistance, the officers' actions were objectively reasonable under the circumstances.

## IV. CONCLUSION

For the reasons stated above, it is, therefore, ORDERED:

(1) **The Report and Recommendation of United States Magistrate Judge Tom Schanzle-Haskins (d/e 49) is ACCEPTED and ADOPTED.**

(2) **Defendant's Objection to the Magistrate Judge's Report and Recommendation (d/e 50) is OVERRULED.**

(3) **Defendant Tyrone Maxwell's Motion to Suppress Evidence Unlawfully Acquired (d/e 16) is DENIED.**

ENTER: August 30, 2021

/s/ Sue E. Myerscough
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE